IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TINA M. RIFFE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Civil Action No. ADC-21-647 |
| | * | |
| WAL-MART STORES EAST, LP, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This action stems from an incident that occurred in the parking lot of the Walmart Supercenter located at 10420 Walmart Drive, Hagerstown, Maryland 21740. ECF No. 2 at ¶ 2. Defendant, Wal-Mart Stores East, LP, moves this Court for summary judgment on Plaintiff Tina Riffe's Complaint. ECF Nos. 2, 44. After considering Defendant's Motion and the responses thereto (ECF Nos. 44, 45, 46), the Court finds that no hearing is necessary.[1] Loc.R. 105.6 (D.Md. 2021). Having also reviewed the pleadings of record and all competent and admissible evidence, the Court finds that there are no genuine issues of material fact as to the claim asserted. Accordingly, for the reasons stated herein, Defendant's Motion is GRANTED.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 29, 2020, Plaintiff drove to the Walmart Supercenter located off Sharpsburg Pike in Hagerstown, Maryland to purchase groceries. ECF No. 44-2 at 2-3. She arrived at the Walmart parking lot shortly before 12:30 p.m. and parked head in toward the left side of the store

---

[1] On March 24, 2021, this case was referred to United States Magistrate Judge A. David Copperthite for all proceedings in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 (D.Md. 2021). ECF Nos. 7, 9, 11.

1

near the entrance to the grocery section. *Id.* at 32; ECF No. 44-5 at 1:01:20. Although Plaintiff recalled that the weather was "chilly" when she arrived on the property, surveillance camera footage reveals that it was sunny and that the parking lot surface was dry. ECF Nos. 44-2 at 32; 44-5 at 1:01:20. After talking on her cell phone for several minutes, Plaintiff exited her vehicle and began to travel towards the store's entrance. ECF Nos. 44-2 at 5-6; 44-5 at 1:09:19. After she rounded the rear of her vehicle, surveillance camera footage captured Plaintiff take several more steps before falling to the ground. ECF Nos. 44-2 at 6-7; 44-5 at 1:09:20-23. After getting back on her feet, Plaintiff proceeded to walk into the Walmart to report her fall. ECF Nos. 44-2 at 7; 44-5 at 1:09:23-1:11:32.

Although not visible in the video, Plaintiff fell near a sanitary sewer clean-out cover ("the cover"). ECF No. 44-9 at 2. This cover was located towards the rear of a parking stall adjacent to the passenger's side of Plaintiff's vehicle. ECF Nos. 44-4 at 1-2; 44-5. The following pictures, taken by a Walmart associate minutes after the incident, depict the cover:



2

ECF No. 44-4 at 5.[2] At the time of the incident, the adjacent parking stall was not occupied.[3] ECF No. 44-5 at 1:09:20-25. The stall's vacancy allowed Plaintiff to set a course to the store's entrance which took her directly over the cover. *Id.* The cover is approximately ten inches long, with a grooved texture and rusted metallic color which are distinct from the rest of the parking lot asphalt. ECF Nos. 44-4; 44-9 at 3; 45-16 at 5.[4] Plaintiff alleges the cover's edges are depressed—by "nearly two (2) inches" in Plaintiff's view—from the adjoining asphalt. ECF Nos. 45-1 at 6; 45-6 at 3, 4; 44-4. Plaintiff claims that when she stepped on one or more of these depressed edges, her "left ankle gave out" causing her to fall and sustain injuries to her left foot, right knee, and left elbow. ECF No. 45-14 at 10, 16.

On February 22, 2021, Plaintiff filed suit in the Circuit Court for Washington County alleging a single count of negligence. ECF Nos. 1-1 at 2; 1-3 at 4. Defendant subsequently removed the action to this Court on March 15, 2021. ECF No. 1. Thereafter, Defendant filed a third-party complaint against The Pike Company ("Pike"). ECF No. 17. Defendant alleged that Pike was responsible for any damages incurred as a result of Plaintiff's fall, as it managed the construction of the parking lot where the incident occurred. *Id.* at 2. Pike subsequently filed a fourth-party complaint against Craig Paving, Inc., alleging that, as the paving contractor for the parking lot project, it was responsible for any damages related to Plaintiff's fall. ECF No. 24 at 2. On December 12, 2022, Defendant filed a motion for summary judgment. ECF No. 44. Plaintiff responded in opposition on December 22, 2022, and Defendant replied on December 27, 2022.

---

[2] The photo on the right is a zoomed in shot of ECF No. 44-4 at 5.
[3] A red Subaru parked in the stall where the cover is located after Plaintiff fell but before the Walmart employee could photograph the scene. ECF No. 44-5.
[4] ECF Nos. 45-12, 45-13, 45-14, 45-15, 45-16, 45-17, and 45-18 are condensed copies of relevant deposition transcripts with four pages of deposition testimony printed to one page. Citations in this Opinion correspond to the assigned ECF page number.

ECF Nos. 45, 46.

## Discussion

### A. Standard of Review

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphasis in original)). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Anderson*, 477 U.S. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id. See Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the Court has drawn all reasonable inferences in favor of the nonmoving party, and "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The party seeking summary judgment bears the initial burden of establishing either that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322-24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth

specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

**B.  Analysis**

1. The "Hole"

First and foremost, it is imperative to understand exactly what Plaintiff alleges caused her to fall. In her complaint, Plaintiff does not describe how the accident occurred. In her opposition she clarifies what factually occurred. The cause of the accident was a cover with an asphalt lip which was below grade. ECF No. 45-1. Plaintiff describes this as a "hole". *Id.* at 4. The hole had edges. *Id*. Plaintiff did not realize that there was a "hole" which "is not level with the ground" until "after [she] fell." *Id.* In her view, the below grade edges created a "hidden trip point[]." ECF No. 45-12 at 5. Prior to the accident the store's front-end coach—Mr. Efrain Duron—was aware of the hole, but simply determined that **it was not deep enough for a customer to fall**. ECF No. 45-1 (emphasis in the original). After the accident, Duron admitted that the Cover **was not flush with the asphalt**. *Id.* (emphasis added). "[T]he contractor had the obligation to build the asphalt flush with the cover and **the Defendant had the responsibility to maintain it flush.**" *Id.* (emphasis in the original).

In her opposition, Plaintiff argues that the "hole" is caused by a "nearly two (2) inch" depression between the edge of the cover and the top asphalt. ECF No. 45-1 at 6. In support of this contention, she submits photos that depict a level sitting on asphalt on either side of the cover. ECF No. 45-6 at 3. However, her method only depicts the slope of the asphalt wherein sits the cover. Plaintiff does not measure the distance between the top of the asphalt and the top of the cover. Plaintiff's photos only depict a slight change in the slope of the ground that appears to occur over several feet if you take the length of the level into consideration:



ECF No. 45-6 at 3. In fact, the photograph shows the cover is nearly flush with the surrounding asphalt, which by Plaintiff's own evidence supports no tripping hazard. It also appears that the tape measure is not vertical but held on an angle which could increase the gap being measured. Indeed, these photos show that there is no real "depression" of almost two inches, just a slight slope of the asphalt that occurs close to the cover. The "hole" or "depression" which separates the cover and the asphalt appears to be much closer to Defendant's measurement, taken by an expert, of "just 9/16 of an inch, including an adjacent 50% slope." ECF No. 44-8 at 1.

When ruling on a motion for summary judgment, a court must "view the evidence in the light most favorable to the nonmovant." *See Pittman v. Nelms*, 87 F.3d 116, 119 (4th Cir. 1996). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Moreover, "when incontrovertible visual evidence exists, a party may not manufacture a dispute of fact . . . ." *Locklear v. Walmart, Inc.*, No. DKC-19-0659, 2020 WL 4286830, at *3

(D.Md. July 27, 2020) (citing *Hall v. WMATA*, 33 F.Supp.3d 630, 632 (D.Md. 2014)). In this case we have opposing parties with two different stories regarding the "depression" or "hole" where the cover is located. The incontrovertible evidence, Plaintiff's photo measuring what Plaintiff describes as a near two-inch depression, depicts no depression or hole at all. It does not measure the distance between the top of the asphalt and the top of the cover but instead simply depicts a slight slope in the ground where the cover sits. Clearly, the Plaintiff is attempting to manufacture disputed facts to salvage her claim by trying to equate the slope of the ground to a near two-inch depression that does not exist.

The testimony of several Walmart employees confirms the incontrovertible evidence (Plaintiff's photograph) that there is no "hole" or notable "depression" around the cover. The store's manager—Mr. Patrick Cochran—measured the "differential between the surrounding asphalt and the cover" at "less than a quarter of an inch." ECF No. 45-16 at 7. Walmart's Senior Manager of Water Compliance—Ms. Katherine Yarberry—testified that the cover appears to be depressed *from the asphalt* by "around half an inch." ECF No. 45-18 at 6 (emphasis added). And, Ms. Amanda Koons, who photographed the scene immediately after the accident, testified that the depression was "not very deep" and that it was not deep enough to "twist an ankle or anything." ECF No. 45-14 at 14-15. Such a small depression is also consistent with the testimony of the store's front-end coach—Mr. Efrain Duron—who explained that the cover did not require any attention because it was not "decreased to a level where somebody could trip on it." ECF No. 45-15 at 12. Accordingly, the Court, considering both the incontrovertible photographic evidence and the above cited testimony, finds that Plaintiff could not have fallen on a two-inch depression or hole, because no such depression or hole existed.

Having determined that Plaintiff did not fall on a hole, the Court must now determine whether the negligible height differential between cover and the top of the asphalt is sufficient to give rise to tort liability. Generally, "minor variations in ground surface [] do not amount to unreasonable risks because pedestrians customarily and ordinarily expect to encounter such variations in terrain." *Duncan-Bogley v. United States*, 356 F.Supp.3d 529, 538 (D.Md. 2018). *See also Leatherwood Motor Coach Tours v. Nathan*, 84 Md.App. 370, 382 (1990) ("[T]he unevenness of the ground surface of the shoulder posed no 'unreasonable risk' to appellant[.]").[5] Cases have recognized that it is an unfortunate reality that "[p]avements will in time become irregular and uneven from roots of trees, heavy rains and snows, or other causes." *Martin v. Mayor & City Council of Rockville*, 258 Md. 177, 182 (1970) (citations omitted). "Regrettably, sidewalk imperfections are a part of ordinary life. At times they may cause someone to fall, and the result may be merely an unfortunate accident rather than a tortious breach of duty." *McManus v. Target Corp.*, Civil Action No. CCB-18-1672, 2019 WL 1746696, at *4 (D.Md. Apr. 17, 2019). As explained above, Plaintiff's photos shows that the cover is nearly flush with the pavement. *See* ECF No. 45-6 at 3. This Court's cases make clear that such an insignificant variation in the terrain cannot serve as the basis for a tortious breach of duty. Accordingly, the Court finds that Defendant is entitled to summary judgment.

2. The Remaining Arguments

   a. Unreasonably Dangerous or Defective Condition

Although I find that the Defendant is entitled to summary judgment based on the incontrovertible visual evidence (Plaintiff's photos), the decisional law of this Court and the

---

[5] Federal courts sitting in diversity must apply the law of the state in which the court is located. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Maryland State Courts makes clear that Defendant would also be entitled to summary judgment even if the Court were to credit, which it does not, Plaintiff's allegation that the depression measured "nearly two (2) inches." Assuming *arguendo* Plaintiff's contention that a depression existed that measured nearly two inches, Defendant argues that it does not constitute an unreasonably dangerous condition and that the depression was open and obvious. ECF No. 44-1 at 7-13. I agree.

Maryland law governs this Court's analysis of Plaintiff's negligence claim. In Maryland, "to assert a claim in negligence, the plaintiff must prove: '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'" *100 Inv. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212-13 (2013) (emphasis omitted) (quoting *Loyd v. Gen. Motors Corp.*, 397 Md. 108, 131-32 (2007)).

The critical element in this case is the second, that Defendant breached its duty of care to Plaintiff. "The duty owed by a property owner to someone on the property varies, depending on the latter's legal status on the property at the time of the incident." *Richardson v. Nwadiuko*, 184 Md.App. 481, 489 (2009). "The highest duty is owed to an invitee. An invitee is 'invited or permitted to enter or remain on another's property for purposes connected with or related to the owner's business.'" *Macias v. Summit Mgmt., Inc.*, 243 Md.App. 294, 322 (2019) (quoting *Bramble v. Thompson*, 264 Md. 518, 521 (1972)). Business owners have a duty "to use reasonable and ordinary care to keep the premises safe *and to protect the invitee from injury caused by an* ***unreasonable risk*** *which the invitee*, by exercising ordinary care for his own safety, will not discover." *Rhaney v. Univ. of Md. Eastern Shore*, 388 Md. 585, 601 (2005) (emphasis added)

(quoting *Southland Corp. v. Griffith*, 332 Md. 704, 715-16 (1993)). Indeed, Maryland courts have explained that the duty owed to pedestrians does not include "the customary, permissible uses and conditions, but dangers of a kind that would not be expected by foot travelers, dangers in the nature of traps." *Leatherwood Motor Coach Tours*, 84 Md.App. at 383 (quoting *Pierce v. City of Balt.*, 220 Md. 286 (1959)). Accordingly, "pedestrians are bound to protect themselves from ordinary uses, obstructions, and comparative roughness of the ground." *Id.*

In *Duncan-Bogley v. United States*, this Court considered whether a .75-inch height differential between two sidewalk slabs outside of a post office constituted a dangerous or defective condition. 356 F.Supp.3d at 529. Initially, the Court rejected the plaintiff's argument that the height differential was unreasonably dangerous because it violated "various national standards and model codes." *Id.* at 539. It explained that such standards, even if adopted, "do not purport to impose duties on owners and occupiers of premises to private parties such that they may be held liable in tort for their violation." *Id.* Additionally, the Court found that the plaintiff had "not made any showing regarding the circumstances of the incident that, along with the 0.75-inch height differential between the concrete slabs, creates a genuine issue of fact for trial." *Id.* Because the incident occurred on a sunny day with nothing blocking or obstructing the plaintiff's view of the sidewalk, the Court concluded that "the 0.75-inch height differential between the concrete slabs . . . is the kind of minor defect for which courts have refused to hold property owners liable." *Id.*

Here, I note that the ASTM standards and Walmart policies on which Plaintiff relies do not establish duties of care, violations of which could form the basis for tort liability. *See Duncan-Bogley*, 356 F.Supp.2d at 539. This is so because unreasonable defects "cannot be reduced to a mathematical formula." *Id.* (quoting *President & Comm'rs of Town of Princess Anne v. Kelly*, 200 Md. 268 (1952)). Rather, the Court must, "on the facts in each case . . . determine whether there

is sufficient evidence of the gravity of the alleged defects to permit a jury to consider the question of negligence." *Id.* (citation omitted).

As with sidewalks, other paved structures like parking lots often have minor imperfections and defects on the walking surface. ECF No. 45-15 at 6. Accordingly, I find the logic of *Duncan-Bogley* persuasive. While Plaintiff has alleged that she tripped on a sanitary sewer clean-out cover which was depressed from the pavement by nearly two inches, she has not alleged any aggravating circumstances to generate a genuine issue of fact for trial. ECF No. 45-1 at 4-6. Surveillance camera footage shows that the incident occurred mid-morning on a sunny day. ECF No. 44-5. The pavement was dry, with no water, ice, or snow obstructing Plaintiff's view. *Id.* And, pictures taken immediately after the incident show that the cover was not surrounded by loose gravel or other debris. ECF No. 44-4 at 1-5. Accordingly, if a near two-inch depression existed under these facts, it would not constitute an unreasonably dangerous condition, as it is the type of defect pedestrians customarily and ordinarily expect when traversing parking lots.

    b.  <u>Open and Obvious Hazard</u>

Even if hazards are unreasonably dangerous or defective, business owners have "no duty to warn an invitee of an open, obvious, and present danger." *Id.* (citing *Casper v. Charles. F. Smith & Son, Inc.*, 316 Md. 573, 582 (1989)). "An 'open and obvious condition' is where the condition and risk are apparent to and would be recognized by a reasonable person in the position of a visitor, exercising ordinary perception, intelligence, and judgment." *Coleman v. United States*, 369 F.App'x 459, 462 (4th Cir. 2010) (quoting 65A C.J.S. Negligence § 639 (2009)). This Court, in *Gellerman v. Shawan Road Hotel Ltd. Partnership* found that a "raised concrete median" located in a parking lot constituted an open and obvious hazard. 5 F.Supp.2d 351, 532-53 (D.Md. 1998). The Court explained that the parking lot's layout "provided wholly unobstructed views in all

directions from plaintiff['s] vantage point." *Id.* at 354. Considering the lot's layout and the fact that Plaintiff fell in the mid-morning of a sunny summer day while there was no oncoming traffic, the Court reasoned that she would have seen "what was there to be seen had she been properly observant in the exercise of reasonable care for her own safety." *Id.* at 354.

Similarly, this Court, in *Feldman v. NVR, Inc.*, found that an "uneven curb at the apron of [an] island median" constituted an open and obvious hazard. No. GJH-14-0672, 2014 WL 6066022, at *1 (D.Md. Nov. 12, 2014). The Court explained that the hazard was open and obvious as pictures of the scene show "a clearly visible elevated [ 1 to 1.5 inch] lip where the white concrete of the curb meets the black asphalt of the street." *Id.* at 4. The Court ultimately concluded that summary judgment was appropriate because "[a]ny reasonable person in [p]laintiff's position, exercising ordinary perception and care, would have recognized the condition and the risks of the defect." *Id.* at *5. And, finally, this Court, in *Locklear v. Walmart, Inc.*, found that a "less than 1" depression" in a Walmart parking lot was open and obvious as it is the type of hazard that "Walmart could expect an invitee to notice and take care." No. DKC-19-0659, 2020 WL 4286830, at *1, 3-4 (D.Md. July 27, 2020).

These cases make clear that many dangerous conditions in parking lots and other asphalt surfaces are not actionable. As explained above, here, there is no hazard at all. And, even if there was a two-inch depression, it was open and obvious. The subject cover is clearly visible, as it has a grooved texture and rusted metallic color distinct from the surrounding pavement.[6] *Id.*; ECF No.

---

[6] In her response, Plaintiff argues that Ms. Amanda Koons, an employee of Walmart, described the cover as "black greyish and the same color as the asphalt." ECF No. 45-1 at 10. While the Court acknowledges that Ms. Koons agreed that the cover was "similar" to the color of the asphalt, she never agreed that the color was "the same." ECF No. 45-14 at 8. Indeed, later in her deposition Ms. Koons testified that she has never had an issue identifying the cover because it is "a different color" than the pavement. *Id.* at 11.

45-14 at 11; ECF No. 45-16 at 5. Plaintiff does not argue that any obstacles obstructed her view of the cover. The surveillance footage reveals that the incident occurred in the mid-morning of a dry sunny day. ECF No. 44-5 at 1:09. When she fell, the parking stall where the cover is located was vacant. *Id.* And, in the moments before and after the incident, no cars entered or exited the aisle where Plaintiff was walking, eliminating the possibility that she was preoccupied looking for oncoming traffic. *Id.* at 1:08:20-1:11:31.

Accordingly, I find that even if Plaintiff could have proven an unreasonably dangerous condition existed, which she did not, the condition of the depression was open and obvious whether it was less than half an inch or near two inches from the top of the asphalt. Because the depression was open and obvious, Defendant was not required to warn Plaintiff by taking the extra measure of marking the depression in some way to indicate a hazard. *See Tennant*, 115 Md.App. at 382 (citing *Casper*, 316 Md. at 582) ("[T]he owner or occupier of land ordinarily has no duty to warn an invitee of an open, obvious, and present danger.").

## CONCLUSION

As is apparent from the cases cited herein, most cases in which summary judgment is granted involve a difference in height such as a curb, median or two opposing slabs of concrete that would constitute a "tripping hazard". This case does not. The incontrovertible visual evidence shows that there was no "hole" for Plaintiff to fall on. Her photo shows that there are no "hidden trip points," just a slight slope of the asphalt that occurs close to the cover. Such a negligible variable in the outdoor walking surface cannot serve as the basis for tort liability. A reasonable person exercising ordinary perception and care would have recognized what Plaintiff characterizes as a "hazard" and appreciated it's risks.

Plaintiff was required to apply reasonable care, to watch where she was going where a potential hazard exists. Had Plaintiff done so in this case, she would have, regardless of the measurement, appreciated any potential hazard.

WHEREFORE I find that in the instant case, Plaintiff has:

(1) Failed to allege a legal basis to hold Walmart accountable for her injuries;

(2) Failed to prove that an unreasonably dangerous condition existed that proximately caused her injuries;

(3) Failed to show that even if an unreasonably dangerous condition existed, the alleged dangerous condition was not open and obvious.

Accordingly, because no reasonable juror could find facts that support Plaintiff's claim, Defendant is entitled to judgment as a matter of law.

For the reasons set forth in this Memorandum Opinion, Defendant's Motion (ECF No. 44) is GRANTED. A separate Order will follow.

Date: 27 January

A. David Copperthite
United States Magistrate Judge